IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LINDA DAWSON-RHOADES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 03-627 GMS |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

**I.    INTRODUCTION**

This case comes from the denial of Linda Dawson-Rhoades' ("Dawson-Rhoades") claim for Social Security disability insurance benefits. Dawson-Rhoades applied for disability insurance benefits ("DIB") under the Social Security Act, 42 U.S.C. § 401-433, on July 14, 2000. (D.I. 8 ("Tr.") 151-52A.) Her claim was denied initially and again upon reconsideration. (Tr. 116-19, 122-25.) Following this denial, Dawson-Rhoades requested a hearing before an Administrative Law Judge ("ALJ"), and one was held on April 11, 2001 ("first hearing") before Judge David S. Antrobus. (Tr. 34-36.) On May 15, 2001, the ALJ issued a written opinion finding that Dawson-Rhoades is not disabled within the meaning of the Social Security Act (the "Act") and denying her claim for supplemental income. (Id. at 12-25.) Subsequently, on October 18, 2001, the Appeals Council granted Dawson-Rhoades' request for review of the decision of the ALJ, vacated the decision, and remanded the case for rehearing. (Tr. 16.) On March 20, 2002, a second hearing was held before Judge Timothy Pace ("second hearing"). On March 29, 2002, the ALJ again denied her claim, finding that Dawson-Rhoades was not eligible

for disability insurance benefits. (Tr. 13-28.) The Appeals Council subsequently denied Dawson-Rhoades' request for review of this decision. (Tr. 6-7.)

Following the denial of the Appeals Council, Dawson-Rhoades filed an appeal with this court on July 7, 2003. (D.I. 1.) Currently before the court are both parties' motions for summary judgment. Because the court finds that the ALJ's decision is supported by substantial evidence, it will deny the plaintiff's motion and grant the defendant's motion.

## II. BACKGROUND

Dawson-Rhoades was born on June 28, 1955, and has a high school education. (D.I. 13 at 53, 71.) The plaintiff's disability claim stems from an accident that occurred on March 6, 1998, when she was pinned by a co-worker's forklift between stacked pallets at work. (D.I 14 at 3.) As a result of this accident, Dawson-Rhoades claims that she suffers from neck, left arm, left shoulder, and hand pain that render her disabled. Dawson-Rhoades was 43 years old at the onset of her alleged disability. (Tr. 21.) To be eligible for DIB, Dawson-Rhoades must prove that she became disabled on or before December 31, 1998, the date that her insured status expired. 42 U.S.C. §423(a)(1)(A), (c)(1).

### A. Medical Evidence

Dawson-Rhoades began seeing Russ M. Ufberg, M.D., for treatment of her neck and left-shoulder pain due to the injuries sustained at work on March 6, 1998. (Tr. 463.) Dawson-Rhoades had also suffered injuries from other accidents, including a workplace accident on April 25, 1995, and an automobile accident on February 24, 1987. (Tr. 18, 463.) During his April 1998 examination, Dr. Ufberg found decreased motion to spine, normal extremity strength, strain and pain in her left shoulder, decreased sensation in her left forearm and hand, right knee trauma

due to a prior injury, carpal tunnel in the left hand, and fibromyalgia resulting from her workplace injury. (Tr. 463-68.) Dr. Ufberg prescribed medication, physical therapy, and a wrist splint. (Tr. 453-467.) Throughout 1998, Dr. Ufberg diagnosed right and left carpal tunnel syndrome, left shoulder strain, back strain, and fibromyalgia related to her March 1998 workplace accident. (Tr. 439-447.) Dr. Ufberg continued to treat Dawson-Rhoades through February 2002 for various conditions related to injuries resulting from other accidents, including a subsequent automobile accident on October 27, 1998. (Tr. 447-463.)

Dawson-Rhoades also consulted Leo Raisis, M.D., an orthopedic specialist, who performed carpal tunnel surgery on her left hand on December 9, 1999, and on her right hand on January 18, 2001. (Tr. 220, 340-41, 393.) After a failed intubation related to these surgeries, she also saw Brett S. Rankin, M.D., in October 1999. (Tr. 205.)

### B.     Hearing Testimony

At the first hearing before the ALJ, Dawson-Rhoades testified that, as a result of the accident, she suffered from wrist, back, and leg pain that makes walking or sitting for long periods of time difficult. (Tr. 112.) William T. Slaven, III, a vocational expert (the "VE"), testified that there were jobs that individuals with Dawson-Rhoades' injury could perform. (Tr. 59-61; 114.) These jobs qualified as unskilled sedentary work limited to tasks not requiring the use of her hands for prolonged repetitive movements. (*Id.*) The VE testified that these jobs included surveillance system monitor, telephone quotation clerk, and label cutter. (Tr. 60; 114.) The VE also noted that if her condition were severe (a claim rejected by the ALJ), then "she obviously could not work." (Tr. at 60.)

At the second hearing, Dawson-Rhoades again testified that she suffers from disability because of injuries to her knees, hands, back, neck, and shoulders resulting from her accident at work. (Tr. 17; 71-76.) At this hearing, a second VE testified that there were jobs that individuals with Dawson-Rhoades' injuries could perform, such as cashier, appointment setter, and market survey worker. (Tr. 22; 95-101.) The VE observed that an individual functioning at a 9 level (out of 10) of pain, as claimed by Dawson-Rhoades but not accepted by the ALJ, would be "unable to perform any work." (Tr. 97, 22.)

### C. The ALJ's Findings

At the second hearing, based on the medical evidence and the testimony of the VE, the ALJ determined that the plaintiff was not under a disability within the meaning of Section 1614(a)(3)(A) of the Act. (Tr. 24.) The ALJ found that Dawson-Rhoades has "the residual functional capacity to perform a significant range of sedentary work." (Tr. 23.) The ALJ also found that "the claimant's allegations regarding her limitations are not totally credible," based on the plaintiff's current level of activity, including caring for her grandchildren and cooking, and lack of corroborating medical evidence as to the severity of her limitations. (Tr. 19-21, 23.) These conclusions were substantially the same as those reached by the ALJ at the first hearing. (Tr. 112-115.)

## III. STANDARD OF REVIEW

### A. Motion for Summary Judgment

Both parties filed motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). In determining the appropriateness of summary judgment, the court must "review the record as a whole, 'draw[ing] all reasonable inferences in favor of the non-moving

party[,]' but [refrain from] weighing the evidence or making credibility determinations. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (internal citations omitted). If the court is able to determine that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law, summary judgment is appropriate. *Hill v. City of Scranton*, 411 F.3d 118, 25 (3d Cir. 2005) (quoting Fed. R. Civ. P. 56(c)).

### B.     Review of ALJ's Findings

The court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence does not mean a large or a considerable amount of evidence. *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Rather, it has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)).

Credibility determinations are the province of the ALJ, and should only be disturbed on review if not supported by substantial evidence. *Pysher v. Apfel*, Civ. A. No. 00-1309, 2001 WL 793305, at *2 (E.D. Pa. Jul.11, 2001) (citing *Van Horn v. Schweiker*, 717 F.2d 871, 973 (3d Cir. 1983)). Thus, the inquiry is not whether the court would have made the same determination, but rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). In social security cases, this substantial evidence standard applies to motions for summary judgment brought pursuant to Fed. R. Civ. P. 56(c). *See Woody v. Sec. of the Dep't of Health and Human Serv.*, 859 F.2d 1156, 1159 (3d Cir. 1988).

## IV. DISCUSSION

The first argument that Dawson-Rhoades makes is that the ALJ improperly determined the credibility of Dawson-Rhoades. (D.I. 14 at 15.) In reviewing her credibility, the ALJ heard substantial evidence on the record calling into question Dawson-Rhoades' testimony as to her conditions. At the first hearing, Dawson-Rhoades testified as to a moderate activity level involving caring for her grandchildren and cooking, yet, at the second, as to her inability to perform that level of activity. (Tr. 20; Tr. 112 (first ALJ decision); *see also* Tr. 50, 53; *cf.* Tr. 53, 51, 89-90.) She also testified to a pain level of 9 out of 10 (with 10 being the "worst pain imaginable"), to her pain medications having no effect, but to having skipped her medications that morning. (Tr. 79-80.) The record further shows potential inconsistencies between Dawson-Rhoades' testimony as to her conditions, and record medical evidence. (Tr. 76 (testimony as to limited lifting ability), 325 (evaluation of Dr. Ufberg); Tr. 92 (ALJ noting limited support for carpal tunnel limitation).) For example, Dr. Ufberg's evaluation found Dawson-Rhoades to have a 25-pound lifting restriction, while Dawson-Rhoades testified at the second hearing that she could not lift a 5-pound bag of sugar or pour a gallon of milk in 1998. (Tr. 76-77; 325.) In sum, the ALJ had multiple grounds to reach a determination firmly within its province. Because substantial evidence supports the ALJ's finding as to Dawson-Rhoades's credibility, the court will not disturb this determination.

Dawson-Rhoades' second argument is that the ALJ's hypothetical question posed to the vocational expert failed to include all of Dawson-Rhoades' limitations, and thus produced an unreliable opinion from the expert. In the decision of March 29, 2002, the ALJ found that the claimant has

> "residual functional capacity for sedentary work as follows: lift no more than ten pounds, stand/walk for two hours of an eight-hour workday, sit for six hours of an eight-hour workday; a moderate difficulty in reaching, handling, and fingering; no bending of the back and neck; walking on level surfaces only; no stooping, crawling, or kneeling; and simple routine tasks requiring little decisionmaking and do not require sustained concentration or attention."

(Tr. 23 (emphasis added).) Dawson-Rhoades argues that the ALJ failed to include all of these limitations in the hypothetical question posed to the VE, and that therefore the VE's finding cannot be relied upon to determine disability. *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002). Yet the ALJ's hypothetical substantially included all those limitations contained in its decision. (Tr. 94-95.) As such, this is far from *Burns v. Barnhart*, where the Third Circuit rejected as inadequate a hypothetical question that "did not refer to any of the type of limitations later outlined in [a medical] report." *Burns*, 312 F.3d at 120, 123. Here, while perhaps the question could have been more clearly stated, the ALJ's hypothetical specifically identified knee, back, reaching, handling, and fingering limitations. (Tr. 94-95.) Because the VE concluded that there are a significant number of jobs that a person with limitations similar to those of Dawson-Rhoades could perform, (Tr. 96-97), the ALJ's finding that Dawson-Rhoades is not disabled is supported by substantial evidence.

The third and last argument made by Dawson-Rhoades is that the ALJ commited legal error by failing to evaluate all medical opinions on the record. Specifically, Dawson-Rhoades argues that the ALJ committed legal error by failing to discuss Dr. Ufberg's nineteen certificates issued from June 1998 through May 2001 indicating that Dawson-Rhoades was "totally disabled." (D.I. 14 at 24; Tr. 348-65.) This argument is not persuasive. First, the ALJ considered "all of the evidence of record," including the certificates at issue. (Tr. 17, 22.) Further, these certificates did not present much objective medical evidence for the ALJ to

consider: they contain little information beyond the date each certificate was signed and the conclusory opinion that Dawson-Rhoades is "totally disabled" for the two months following that date. *Cf.* SSR 96-5p (treating physician often best source of medical documents, but impairment finding is usually issue of medical fact, not medical opinion, ultimately reserved to Commissioner). Moreover, the ALJ considered Dr. Ufberg's opinions as to Dawson-Rhoades' specific functional restrictions in a letter of August 27, 2001; indeed, the ALJ based certain findings, in part, upon them. (Tr. 324ff.; Tr. 18-20 (decision noting Dr. Ufberg's finding as to lifting restriction and treatment of Dawson-Rhoades for neck, shoulder, knee, back, and wrist pain).) Finally, the materials from Dr. Ufberg that provide objective medical evidence, such as the 20- to 25-pound lifting restriction, (Tr. 325), rather than conclusory statements that Dawson-Rhoades is "totally disabled," (Tr. 348-65), confirm the specific conclusions of the ALJ. (Tr. 23.) Dr. Ufberg's specific findings therefore provide substantial evidence supporting, rather than contradicting, the ALJ's conclusion as to the extent of Dawson-Rhoades' disability.

Accordingly, the court does not see any persuasive reason to disturb the ALJ's finding that, despite the pain that her accident has caused, Dawson-Rhoades "retains the residual functional capacity to perform a significant range of sedentary work." (Tr. 23.) For these reasons, the court will uphold the ALJ's decision and grant the defendant's motion for summary judgment.

Dated: March 27, 2008            /s/ Gregory M. Sleet
                                 CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANTHONY DAWSON-RHOADES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 03-627 GMS |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| ) | |
| Defendant. ) | |

## **ORDER**

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. The plaintiff's Motion to Summary Judgment (D.I. 13) is DENIED.

2. The defendant's Motion for Summary Judgment (D.I. 15) is GRANTED.

Dated: March 27, 2008          /s/ Gregory M. Sleet
                               CHIEF, UNITED STATES DISTRICT JUDGE